UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

KRISTOPHER DOTSON, individually
and on behalf of similarly
situated persons,

    Plaintiffs,

v.                          Civil Action No. 2:17-cv-00896

P.S. MANAGEMENT, INC.,
PFC, INC., P.S. II,
INCORPORATED, and
P.S. III, INC.,

    Defendants.

## MEMORANDUM OPINION & ORDER

Pending is the parties' joint motion, filed August 27, 2018, for approval of their collective action settlement agreement. Also pending is plaintiffs' separate motion for fees and costs, filed August 27, 2018.

I.

The plaintiff initiated this action in this court on January 25, 2017, charging defendants with alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and the West Virginia Wage and Maximum Hours Act, W. Va. Code §21-5C-1 et seq. Plaintiff Kristopher Dotson, a former employee of defendants P.S. Management, Inc. and P.S. II, Incorporated,

claimed that defendants under-reimbursed their pizza delivery drivers for expenses incurred while delivering pizzas to the point that their employees' net wages fell below the minimum wage. Id. § 216(b).

On June 30, 2017, the parties filed a stipulation of conditional collective action certification pursuant to 29 U.S.C. § 216(b) and asked the court to accept the parties' proposed notice to the class, ECF No. 15, which the court approved on July 24, 2017, ECF No. 20. The plaintiff distributed the notice of the collective action according to the conditions set by the court, and 176 individuals filed consents to join the collective action. The parties undertook continuous negotiations toward settlement. They reached an agreement on July 9, 2018 and filed a joint notice of settlement with the court the next day. The parties later filed the pending motion, seeking approval of the settlement. Attached to the motion is the Settlement and Release Agreement. Plaintiffs also filed a separate motion seeking costs and fees to which no objection has been made. On December 5, 2018, at the request of the court, the parties filed a supplemental submission in support of their joint motion. ECF No. 77.

II.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 69 (2013). Doing so would thwart the purpose of the Act, which is "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 739 (1981) (alteration in original) (quoting 42 U.S.C. § 202(a)). Consequently, FLSA claims for back wages can be settled in only two ways, only one of which is relevant here: "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946), and Jarrard v. Southeastern Shipbuilding Corp., 163 F.2d 960, 961 (5th Cir. 1947)).

Because the Court of Appeals for the Fourth Circuit has not yet had occasion to endorse a standard for approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores." Kim v. Confidential Studio Inc., No. PWG-15-410, 2017 WL 3592455 at *2 (D. Md. Aug. 21, 2017) (citing cases). As succinctly stated by the district court in Confidential Studio,

> [t]he settlement must "reflect[ ] a fair and reasonable resolution of a bona fide dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from [Federal Rule of Civil Procedure] 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement.

Id. (second alteration in original) (citing cases and quoting Lynn's Food Stores, 679 F.2d at 1355).

First, the FLSA issues here are actually in dispute. The plaintiffs argue that they are owed unpaid minimum wages, liquidated damages and interest; defendants disagree. The proposed settlement agreement states that "Defendants denied and continue to deny the Named Plaintiff's allegations in the Litigation . . . and denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or cause of action asserted in the Litigation." ECF No. 74-1, Recitals.

Second, the relevant factors from Rule 23's assessment for fairness and reasonableness are as follows:

> (1) The extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery.

Patel v. Barot, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014); see also Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975); Irvine v. Destination Wild Dunes Mgmt., Inc., 204 F. Supp. 3d 846, 849 (D.S.C. 2016) (listing the "opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object" as an additional factor for courts to consider).

While discovery in this matter has not ended, the parties exchanged delivery and reimbursement records for each opt-in plaintiff. Careful analysis of this information enabled the parties to evaluate relevant claims and defenses as well as estimate damages. The settlement was the product of arm's-length mediation by experienced counsel. Further, William Lemons, a highly respected FLSA mediator, presided over mediation. Although the mediation session did not conclude with a settlement, the parties continued to vigorously negotiate

afterward. The parties have been engaged in settlement discussions since at least January of 2018, when the court entered an order amending certain deadlines to permit settlement discussions in this collective action to proceed uninterrupted. See ECF No. 66. Further, when employees, represented by counsel, bring FLSA claims against their employers, there is some assurance of an adversarial context and therefore a stronger indication of a fair settlement. See Lynn's Food Stores, 679 F.2d at 1354.

Counsel for the parties, who are experienced and who have competently pursued this action, are of the opinion that the proposed settlement is a "fair and reasonable compromise of a *bona fide* dispute." ECF No. 74, at 2. There is no evidence that their conclusion was reached through fraud or collusion. Additionally, counsel for the parties maintain that based on the probability of success on the merits, measured against the risks and costs of continued litigation, the settlement amount is reasonable. See id. at 12-14.

The proposed settlement is for $300,000.00 from which the following is to be deducted: one third for attorneys' fees of $100,000.00, costs to this point of $10,051.07 and an incentive payment of $5,000.00 to the named plaintiff, Mr. Dotson. All remaining funds, being $184,948.93, are to be

distributed to the opt-in plaintiffs on a pro-rata basis according to an equitable formula determined by each plaintiff's number of hours worked, his wage rate, miles driven, and vehicle reimbursement rate during the applicable limitations period. ECF No. 74-1, Settlement Terms.

While the settlement agreement itself is silent as to the particular calculations which determine the amount to be paid to each plaintiff, the manner of calculation for the amount allegedly owed to each plaintiff may be derived from the Complaint. Compl., ECF No. 1, ¶¶ 28-44. Kristopher Dotson was reimbursed $1.10 per delivery for delivering pizzas in his personal vehicle on trips that were deemed to average five miles, for a reimbursement rate of $.22 per mile. The plaintiff claimed that this reimbursement rate was too low. To illustrate, in 2013 through 2015, the years in which Dotson was employed by defendants, the IRS business mileage reimbursement rate was, at its lowest, $.56 per mile. See IRS, Standard Mileage Rates, https://www.irs.gov/tax-professionals/standard-mileage-rates. Using the IRS reimbursement rate, and noting that Dotson averaged two deliveries per hour covering ten miles, Dotson would have been under-reimbursed by approximately $.34 per mile and $3.40 per hour.

The parties know the number of deliveries made by each plaintiff during the relevant pay periods and the corresponding total reimbursement paid by the defendants to each plaintiff for those deliveries. ECF No. 77-2. In order to calculate the per-mile reimbursement rates paid to the employees by defendants, and accordingly, the additional reimbursements left to be paid, plaintiffs' counsel estimated the average delivery distance driven by each plaintiff. ECF No. 77, at 2-3. Thus, the parties were able to compare the rates actually paid to plaintiffs with a hypothetical, reasonable reimbursement rate in order to estimate the maximum value of actual damages available to the class as a whole. ECF No. 77-2, at 129.

By using what the parties believe to be a reasonable, per-mile reimbursement rate of $.45,[1] and by estimating an average delivery distance of five miles,[2] plaintiffs' counsel

---

[1] The reasonable per-mile reimbursement rate of $.45, agreed to by the parties, is not actually being paid to the plaintiffs here, but rather, is being used to set the amount of collective maximum damages the plaintiffs might obtain so that the parties can compare that figure with the amount to be paid under the proposed settlement.

[2] Plaintiffs' counsel settled on a five-mile average delivery distance because defendants produced one piece of evidence to show that their reimbursement formula was based on an average delivery distance of five miles, and one of the opt-in plaintiffs recorded his odometer readings before and after making each delivery, which demonstrated that his average delivery distance was approximately five miles. ECF No. 77-3, at 2. However, this information and how it relates to the

calculated a maximum amount of actual damages of $494,081.79. In the parties' joint motion, it was claimed that in settling for $300,000.00, Mr. Dotson would receive his actual damages if he was reimbursed at $.45 per mile. ECF No. 74, at 12. In the supplemental submission in support of the joint motion, plaintiffs' counsel notes that when he claimed Mr. Dotson would recover his actual damages in the settlement, he had calculated the maximum actual damages available to the plaintiffs at approximately $300,000 by using an estimated delivery distance of four miles per delivery. ECF No. 77, at 3. Counsel acknowledges that in using the four mile per delivery estimation, the extent of Mr. Dotson's recovery under the settlement was mistakenly misrepresented. Id. ECF No. 77, at 3; ECF No. 77-2, at 129.

The maximum amount of actual damages of $494,081.79 presumes that plaintiffs would be successful in proving willfulness and thereby obtain a three-year statute of limitations recovery period. See 29 U.S.C. §255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years after the cause of action accrued."). The total settlement here equates to approximately

---

payment of the settlement funds to the plaintiffs is not contained in the settlement agreement.

sixty-one percent of the plaintiffs' maximum estimated value of actual damages ($300,000.00/$494,081.79 = .607).  ECF No. 77, at 3; ECF No. 77-2.

The parties maintain that the settlement agreement is fair and reasonable, even when considering that the entire settlement amount only constitutes sixty-one percent of the maximum value of actual damages that the plaintiffs' counsel estimates plaintiffs might earn through litigation.  ECF No. 77, at 3-4.  The parties note several cases in which courts have approved settlements with similar terms.  See, e.g., Jiminez v. Pizzerias, LLC, No. 1:16-CV-22035-KMM, 2017 U.S. Dist. LEXIS 129820, at *11 (S.D. Fla. Aug. 14, 2017) (approving the settlement of an FLSA pizza delivery claim for an amount equivalent to approximately two-thirds the maximum value of actual damages for the 174 opt-in plaintiffs, out of which attorneys' fees, costs, and an incentive award would be paid); Vigna v. Emery Fed. Credit Union, No. 1:15-cv-51, 2016 WL 7034237, at * 3 (S.D. Ohio Dec. 2, 2016) (approving a settlement constituting fifty-five percent of the wages allegedly owed under the FLSA to 75 collective class members, out of which attorneys' fees, costs, and an incentive award would be paid); Fuentes Cordova v. R & A Oysters, No. 14-0462-WS-M, 2016 U.S. Dist. LEXIS 123042, at *2-3 (S.D. Ala. Sept. 12, 2016)

(approving a settlement constituting fifty percent of the potential recovery of wages).

The court is not persuaded that the settlement agreement presented here is fair and reasonable.

The amount to actually be distributed to the plaintiffs here is just under $185,000.00, which amounts to only 37% of the maximum value of actual damages that plaintiffs' counsel calculates could be won in litigation. The estimated maximum actual damages also fails to reflect any amount for statutory or liquidated damages available to plaintiffs should they be successful. See 29 U.S.C. § 216(b). The FLSA entitles successful plaintiffs to liquidated damages in an amount equal to the payment of wages lost. Id. Further, the settlement agreement itself is silent as to the specifics regarding how the maximum damages were determined and how the pro-rata distribution of the settlement funds, based on the criteria listed therein, is to be calculated. Nor do the parties advise the court as to what amount each claimant will receive and how that compares to what he ought to have received had he been properly paid in the first instance.

The FLSA also states that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendant, and costs of the action." Id. (emphasis added). While counsel for plaintiffs in FLSA cases may petition the court for reasonable attorney's fees and costs to be distributed out of a settlement agreement, the parties here fail to include the fees and costs owed to plaintiffs' counsel when considering the maximum amount that might be obtained by the plaintiffs and their counsel should they prove successful at trial.

The court acknowledges that several of the factors listed above weigh in favor of finding this to be a fair and reasonable settlement. However, not only is the amount to actually be distributed to the plaintiffs merely 37% of the estimated maximum value of actual damages, it wholly ignores the potential doubling of that amount through liquidated damages that plaintiffs might win at trial, as well as the attorney's fees and costs. Liquidated damages are substantial claims here in view of the low level of reimbursement that is alleged to have been paid by the defendants to their workers on the job.[3] If the plaintiffs were entirely successful on their claims, according to the figures provided by the parties, they would be entitled to $988,163.58 (double the amount of actual damages), and counsel for the plaintiffs would be entitled to fees and

---

[3] Even in their calculation of damages, the reimbursement rate the parties use is $.45 as opposed to the IRS reimbursement rate of $.56 per mile.

costs independent of that award. Yet the plaintiffs' recovery under this settlement agreement represents only a minor fraction of that amount.

Additionally, the absence of specifics in the settlement agreement as to what each plaintiff will actually be paid, and how each payment is to be calculated, is particularly concerning given that the parties have provided the court with three different calculations of the reimbursement owed to the plaintiffs. <u>See</u> ECF No. 77, at 1-3. For these reasons as well, the court is unable to find that the settlement agreement is fair and reasonable.

Inasmuch as the court does not find the settlement amount fair and reasonable, it need not assess the reasonableness of the attorney's fees and costs included in the agreement or the propriety of the incentive payment to Mr. Dotson.

### III.

For the foregoing reasons, the court finds that the parties have not satisfied the three requirements for approving the settlement of an FLSA claim for unpaid minimum wages. Accordingly, it is ORDERED that the parties' joint motion for

final certification of the collective action, for approval of the settlement agreement and for dismissal of this action be, and hereby is, denied without prejudice, and that plaintiffs' motion for fees and costs be, and hereby is, denied without prejudice.

It is further ORDERED that the parties file, within thirty days of the entry of this order, a Rule 26(f) report so that the court my set a schedule by which this matter will proceed.

The Clerk is directed to transmit copes of this order to all counsel of record and to any unrepresented parties.

Enter: March 29, 2019

John T. Copenhaver, Jr.
Senior United States District Judge