```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

KRISTOPHER DOTSON, individually
and on behalf of similarly
situated persons,

    Plaintiffs,

v.                                    Civil Action No. 2:17-cv-00896

P.S. MANAGEMENT, INC.,
PFC, INC., P.S. II,
INCORPORATED, and
P.S. III, INC.,

    Defendants.

## MEMORANDUM OPINION & ORDER

Pending is the parties' Combined Joint Motion to Approve Collective Action Settlement, filed July 22, 2019.

### I.    Background

Plaintiff Kristopher Dotson initiated this action in this court on January 25, 2017, charging defendants with alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u> and the West Virginia Wage and Maximum Hours Act, W. Va. Code § 21-5C-1 <u>et seq.</u>  The plaintiff, a former employee of defendants P.S. Management, Inc. and P.S. II, Incorporated, claimed that defendants under-reimbursed their pizza delivery

drivers for expenses incurred while delivering pizzas to the point that their employees' net wages fell below the minimum wage.  See 29 U.S.C. § 216(b).

On June 30, 2017, the parties filed a stipulation of conditional collective action certification pursuant to 29 U.S.C. § 216(b) and asked the court to accept the parties' proposed notice to the class, ECF No. 15, which the court approved on July 24, 2017, ECF No. 20.  The plaintiff distributed the notice of the collective action according to the conditions set by the court, and 176 individuals filed consents to join the collective action.  The parties undertook continuous negotiations toward settlement.  They reached an agreement on July 9, 2018 and filed a joint notice of settlement with the court the next day.  The parties filed, on August 27, 2018 a joint motion, seeking approval of the settlement.  On the same day, plaintiffs' counsel filed a motion for fees and costs.

On March 29, 2019, the court entered its memorandum opinion and order denying without prejudice both the joint motion for approval of the settlement and the plaintiffs' motion for fees and costs.  As discussed more fully therein, the court found that the settlement amount was not fair and reasonable.  ECF No. 78 at 5-13.

On July 22, 2019, the parties filed another joint motion to approve the settlement class and provided clarification and additional reasons for why they believe the settlement amount, which is the same as was proffered in August 2018 and described in detail below, is indeed fair and reasonable.  The court did not evaluate the merits of plaintiffs' companion motion for attorneys' fees and costs when it denied the motion filed on August 27, 2018, but inasmuch as the court now finds the settlement agreement fair and reasonable, it will do so now as though the motion for fees and costs were renewed.

## II.  Analysis

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  Doing so would thwart the purpose of the Act, which is "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'"  Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 739 (1981) (alteration in original) (quoting 42 U.S.C.

§ 202(a)).  Consequently, FLSA claims for back wages can be settled in only two ways, only one of which is relevant here: "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946), and Jarrard v. Southeastern Shipbuilding Corp., 163 F.2d 960, 961 (5th Cir. 1947)).

Because the Court of Appeals for the Fourth Circuit has not yet had occasion to endorse a standard for approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores."  Kim v. Confidential Studio Inc., No. PWG-15-410, 2017 WL 3592455 at *2 (D. Md. Aug. 21, 2017) (citing cases).  The court in Confidential Studio found that:

> The settlement must "reflect[ ] a fair and reasonable resolution of a bona fide dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from [Federal Rule of Civil Procedure] 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement.

Id. (second alteration in original) (citing cases and quoting Lynn's Food Stores, 679 F.2d at 1355).

First, the FLSA issues here are actually in dispute. The plaintiffs argue that they are owed unpaid minimum wages, liquidated damages and interest; defendants disagree. The proposed settlement agreement states that "Defendants denied and continue to deny the Named Plaintiff's allegations in the Litigation . . . and denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or cause of action asserted in the Litigation." ECF No. 87-1, Recitals.

Second, the relevant factors from Rule 23's assessment for fairness and reasonableness are as follows:

> (1) The extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery.

Patel v. Barot, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014); see also Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975); Irvine v. Destination Wild Dunes Mgmt., Inc., 204 F. Supp. 3d 846, 849 (D.S.C. 2016) (listing the "opinions of class counsel and class members after receiving notice of the settlement

whether expressed directly or through failure to object" as an additional factor for courts to consider).

While discovery in this matter has not ended, the parties exchanged delivery and reimbursement records for each opt-in plaintiff. Careful analysis of this information enabled the parties to evaluate relevant claims and defenses as well as estimate damages. The settlement was the product of arm's-length mediation by experienced counsel. Further, William Lemons, a highly respected FLSA mediator, presided over the mediation. Although the mediation session did not conclude with a settlement, the parties continued to negotiate vigorously afterward. The parties have been engaged in settlement discussions since at least January of 2018, when the court entered an order amending certain deadlines to permit settlement discussions in this collective action to proceed uninterrupted. See ECF No. 66. Further, when employees, represented by counsel, bring FLSA claims against their employers, there is some assurance of an adversarial context and therefore a stronger indication of a fair settlement. See Lynn's Food Stores, 679 F.2d at 1354.

Counsel for the parties, who are experienced and who have competently pursued this action, are of the opinion that the proposed settlement is a "fair and reasonable compromise of

Plaintiffs' claims." ECF No. 87 at 7. There is no evidence that their conclusion was reached through fraud or collusion. Additionally, counsel for the parties maintain that based on the probability of success on the merits, measured against the risks and costs of continued litigation, the settlement amount is reasonable. See id. at 8-16.

The proposed settlement is for $300,000.00 from which the following is to be deducted: one third for attorneys' fees of $100,000.00, "[a]n amount not to exceed $10,500" for costs borne by plaintiffs' counsel and an incentive payment of $5,000.00 to the named plaintiff, Mr. Dotson. All remaining funds, likely being $184,500.00, are to be distributed to the opt-in plaintiffs on a pro-rata basis according to an equitable formula determined by each plaintiff's number of hours worked, his wage rate, estimated miles driven, and vehicle reimbursement rate during the applicable limitations period. ECF No. 87-1, Settlement Terms.

While the settlement agreement itself is silent as to the particular calculations that determine the amount to be paid to each plaintiff, the parties have provided a detailed spreadsheet by which the estimated amount owed and the amount to be distributed to each plaintiff has been calculated. ECF No. 87-2.

The parties know the number of deliveries made by each plaintiff during the relevant pay periods and the corresponding total reimbursement paid by the defendants to each plaintiff for those deliveries.  Id.  In order to calculate the per-mile reimbursement rates paid to the employees by defendants, and accordingly, the additional reimbursements left to be paid, the parties estimated the average delivery distance driven by each plaintiff.  Id.; ECF No. 87-3.  Thus, the parties were able to compare the rates actually paid to plaintiffs with a hypothetical, reasonable reimbursement rate in order to estimate a compromised amount of actual damages to which plaintiffs might be entitled.  ECF No. 87-2.

By using what the parties believe to be a reasonable, per-mile reimbursement rate of $0.45,[1] and by estimating an average delivery distance of four miles, the parties calculated the "Total Value of the Settlement at $0.45 per Mile" to be just under $300,000.00.  Id.  This calculation was made by multiplying the total number of deliveries made by each plaintiff by the estimated four-mile delivery distance to obtain

---

[1] The parties claim that that the $0.45 per mile reimbursement rate is a reasonable compromise of their dispute about what the reimbursement rate should have been.  Plaintiffs contend that the actual reimbursement rates paid, although varying from plaintiff to plaintiff, was too low, and defendants assert that plaintiffs' suggested $0.56 IRS tax rate is too high and is inapplicable for FLSA purposes.  ECF No. 87 at 9-10.

an estimate of the total number of miles driven by each plaintiff ("estimated number of miles").  The parties then multiplied those estimated number of miles by the compromised reimbursement rate of 0.45 per mile and subtracted from those totals the values of the estimated number of miles multiplied by the reimbursement rate or rates actually paid to each plaintiff. Id.  Those differences were then added together to reach the approximately $300,000.00 figure noted above.  Id.  Moreover, the parties have provided in detail all the relevant information pertaining to each opt-in plaintiff and have identified the amount to be paid to each of them should this settlement be approved.

   The amount to be distributed to the plaintiffs is $184,500.00 and is approximately 61% of damages that plaintiffs might receive at an estimated four miles per delivery at a compromised reimbursement rate of $0.45 per mile.  While it does not consider liquidated damages, the parties contend that the compromised amount to be received by the plaintiffs accounts for the possibility that they would receive $0 if litigation continued.  The court further notes that at this time, the plaintiffs have received extensive notice of the settlement and settlement amount and have not objected.  Indeed, even after the court originally found the $300,000.00 amount not to be fair and

reasonable, the parties filed the current motion to approve that same amount and in doing so undertook to allay the court's previously expressed concerns.

After weighing the factors for fairness and reasonableness set forth above, and given the unpredictable nature of litigation, the court concludes that the settlement is a fair and reasonable resolution of a bona fide dispute.

As to the $5,000.00 incentive payment to Kristopher Dotson, the named plaintiff, "incentive payments[] have been awarded in FLSA collective actions." Irvine, 204 F. Supp. 3d at 850. "To determine whether such a payment is warranted, the Court must consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Id. at 850-51 (citations omitted). The efforts of Mr. Dotson, as attested by plaintiffs' counsel (participating in all mediation and negotiation sessions, reviewing documents, informing other drivers of the lawsuit and more), see ECF No. 74, Ex. 2 ¶ 16, are deserving of this reasonable service award.

As noted above, inasmuch as plaintiffs' counsel has not renewed their motion for fees and costs but have not asked for a greater amount of fees and have capped the costs they

might recover at $10,500.00, the court will evaluate counsel's previously filed motion for fees and costs.

> As this court has explained:
>
> the FLSA contemplates that "the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs." Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946). Therefore, the reviewing court must assess the reasonableness of the attorney's fees to be awarded "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (unpublished opinion); see also Poulin v. Gen. Dynamic Shared Res., Inc., 3:09-cv-00058, 2010 WL 1657222, at *3, 2010 U.S. Dist. LEXIS 47511, at *3-4 (W.D. Va. May 5, 2010).

Bryant v. Lab. Corp. of Am. Holdings, No: 2:11-cv-00604, 2012 U.S. Dist. LEXIS 101713, at *3-4 (S.D.W. Va. July 23, 2012). "The proper calculation of an attorney's fee award involves a three-step process." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013); see Meadows v. AM & GH LLC, No. 2:15-cv-13370, 2018 WL 3876587, at *2-3 (S.D.W. Va. Aug. 15, 2018) (applying this process to an FLSA case). First, the court "determine[s] the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." McAfee, 738 F.3d at 88. Then the court "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones" and finally "award[s] some

percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.[2]

In determining what constitutes reasonable hours expended and rates charged, the court considers twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243-44 (4th Cir. 2009) (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When considering the hourly rate, four factors are particularly relevant: (1) the customary fee for like work; (2) the experience, reputation, and ability of the attorneys; (3) attorneys' fees awards in similar cases; and

---

[2] The court notes that plaintiffs' counsel spends the first six pages of the thirteen-page motion for fees and costs arguing the benefits of the percentage method of distribution of attorney's fees from a common fund, as opposed to the lodestar method. The court does not address the merits of these arguments, as the court, at least in part, utilizes here the lodestar method to determine whether attorney's fees in an FLSA settlement are reasonable.

(4) the amount in controversy and the results obtained. Wolfe v. Green, No. 2:08-cv-01023, 2010 WL 3809857, at *5 (S.D.W. Va. Sept. 24, 2010).

The Fourth Circuit has found that it would be an "abuse of discretion for the district court . . . to forego the lodestar approach and to calculate reasonable attorney's fees by adopting the attorney's customary contingent-fee arrangement" in FLSA actions. Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992) (citing Blanchard v. Bergeron, 489 U.S. 87, 96 (1989)). However, an award of a larger fee might be justified if the court considers, again, the factors set forth in Robinson. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "While it is well within the discretion of the district court to determine the amount of an award of attorney's fees . . . and to adjust the lodestar upward or downward as it deems appropriate, this must be done on a principled basis, clearly explained by the court." Id. at 989 (internal citations omitted).

Counsel for the plaintiff has applied for $100,000.00 in attorney's fees, which represents one-third of the total settlement amount, plus an amount not to exceed $10,500.00 for costs. ECF No. 75 at 2; ECF No. 87-1, Settlement Terms. The settlement agreement notes, however, that should the court

13

decide to reduce plaintiffs' counsel's requested fee, that the amount of the reduction shall be reallocated to the plaintiffs. ECF No. 87-1, Settlement Terms.

On behalf of the Weinhaus & Potashnick law firm, Mark Potashnick claimed entitlement to $25,527.50 in fees for a combined 59.4 hours of work (of which $25,065.00 is for 55.7 hours by counsel) and expenses of $2,754.74. ECF No. 75, Ex. 1 ¶¶ 19-21.[3] Kendra John, office manager and paralegal with Paul LLP, submitted a declaration on behalf of Paul LLP requesting a total of $39,871.00 in fees for a combined 170 hours of work (of which $25,647.50 is for 52.9 hours by counsel) and $7,297.23 in expenses. ECF No. 75, Ex. 2 ¶¶ 3, 5.[4] The total expense for both firms combined is $10,051.97. The parties allotted $10,500.00 for costs and the court recognizes that the remainder

---

[3] Mark Potashnick spent 55.7 hours on the matter at a rate of $450.00 per hour, paralegal Allison Leventhal spent 0.5 hours on the matter at a rate of $125.00 per hour, and paralegal Teresa Kendrick spent 3.2 hours on the matter at $125.00 per hour. ECF No. 75, Ex. 1 ¶ 20.

[4] On this matter, Richard Paul spent 30.8 hours at a rate of $600.00 per hour, Jack McInnes spent 6.9 hours at a rate of $405.00 per hour, Sue Becker spent 4.6 hours at a rate of $275.00 per hour, Sean Cooper spent 7 hours at a rate of $300.00 per hour, and Laurel Darby spent 3.6 hours at a rate of $280.00 per hour. ECF No. 75, Ex. 2 ¶ 3. Paralegal Pat Neal spent 68 hours at a rate of $120.00 per hour, paralegal Linda Davis spent 7.4 hours at a rate of $130.00 per hour, paralegal Kendra John spent 34.6 hours at a rate of $130.00 per hour, and clerk Cassidy Paul spent 7.1 hours at a rate of $85.00 per hour. Id.

of this allotment will doubtless be consumed in administering payments to plaintiffs.

The court evaluates the request of plaintiffs' counsel using the framework provided in Robinson. As another court in this circuit noted about these particular attorneys in another FLSA case against pizza delivery companies:

> With respect to factors (2), (3), (9), and (10), the Court finds that the fees are reasonable based on the Class Counsels' skill. They are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

Hackett v. ADF Rest. Invs., 259 F. Supp. 3d 360, 368 (D. Md. 2016).[5]

As to factors (5), (6), and (8), the court finds the attorneys' fees reasonable given the parties' expectations. Challenging pizza delivery companies on the basis of unpaid minimum wages in the context of partially unreimbursed expenses is a complex area of the law, an area to which plaintiffs' counsel has substantially contributed. The named plaintiff received both a percentage of the damages alleged and an incentive payment, and it is likely that without this lawsuit,

---

[5] Also present in Hackett, but not provided by counsel here, was an affidavit from Ken Gauvey, a Maryland labor lawyer who noted that these lawyers are "among the first rank of lawyers practicing in this field." 259 F. Supp. 3d at 368.

other employees of defendants would not have known they had a cause of action at all.  Plaintiffs' counsel also note that they typically receive, as a fee, 35-40% of a settlement fund.  ECF No. ECF No. 75 at 7.  Further, other courts have approved the fees of the lead attorneys in this case, Mark Potashnick and Richard Paul, at rates of $450.00 and $600.00 per hour, respectively, in similar cases that they pursued under the FLSA.  See, e.g., Hoffman v. Poulsen Pizza, LLC, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017).

Finally, regarding factors (1), (4), and (12), the fee appears reasonable given that counsel conducted approximately 230 hours of work on this matter.  The court finds this to be a reasonable calculation of hours inasmuch as this suit included 176 members of the collective class and involved drafting the complaint, investigating the facts, preparing pleadings, reviewing documents provided by defendants, analyzing defendants' payroll and delivery data, communicating with class members, negotiating terms of settlement, creating computerized damage models, and devising a formula for allocation of the common fund to the plaintiffs.  ECF No. 75 at 9; ECF No.75-1 ¶ 19.  Counsel also acknowledges that this work necessarily precluded them from pursuing or engaging in other litigation opportunities.  ECF No. 75 at 9.

The total lodestar calculation for plaintiffs' counsel is $50,712.50, and the requested fee of $100,000.00 is 1.97 times the lodestar calculation. The 1.97 figure would be reduced to 1.53 if the 113.7 paralegal hours and 7.1 clerk hours, amounting to $14,686.00, were included. The 1.97 multiplier is well within the mean range of multipliers. See Berry v. Schulman, 807 F.3d 600, 617 (4th Cir. 2015) (affirming a lodestar multiplier of 1.99); Thomas Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 273 (2010) (finding that the mean multiplier in the Fourth Circuit was 2.43 in a study of cases between 2003-2008); William B. Rubenstein, Newberg on Class Actions § 15:87 (5th ed.) ("Empirical evidence of multipliers across many cases demonstrates that most multipliers are in the relatively modest 1–2 range.").

In light of the foregoing, the court concludes that the fees sought by plaintiffs' counsel are reasonable, that the plaintiffs will be reasonably compensated and that the amounts recovered by the plaintiffs are not tainted by a conflict of interest with counsel. The court finds that plaintiffs' counsel are entitled to $100,000.00 in fees and whatever costs they may have incurred so long as they do not exceed $10,500.00.

### III. Conclusion

For the foregoing reasons, the court finds that the parties have satisfied the three requirements for approving the settlement of an FLSA claim for unpaid minimum wages. Accordingly, it is ORDERED that the parties' joint motion to approve the collective action settlement be, and it hereby is, granted, and that plaintiffs' motion for fees and costs be, and it hereby is, granted.

The parties are directed to disburse the settlement sum by payment to those entitled thereto on or before May 8, 2020, and file a final report that all sums have been so paid and the checks issued therefor have been cashed, which final report shall be filed on or before May 29, 2020.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: April 7, 2020

John T. Copenhaver, Jr.
Senior United States District Judge